ROSA SANTIAGO-TIRADO,

Plaintiff,

v.

PUERTO RICO TELEPHONE COMPANY, ET AL.,

Defendants.

CIV. NO.: 16-1901 (SCC)

**OMNIBUS OPINION AND ORDER**

Plaintiff Rosa Santiago Tirado ("Santiago" or "plaintiff"), has been an employee of the Puerto Rico Telephone Company ("PRTC") for 27 years. She filed suit against her employer, its insurance company, AIG Insurance Company-Puerto Rico ("AIG") and against the Independent Union of Telephone Employees ("UIET"), of which she is a member. She claimed violations of the Employee Retirement Income Security Act of 1974,("ERISA"), the Americans with Disabilities Act ("ADA"), retaliation and violations of Puerto Rico Act No. 115 of December 20, 1991, 29 L.P.R.A. §§194; Act No. 44 of July 2,

1985, 1 L.P.R.A. §§ 501; and Puerto Rico's Constitution, Article II, Sections 1, 8, 16, 20 and Article 1802 of Puerto Rico's Civil Code, 31 L.P.R.A. § 5141.

## I. Procedural Background

Santiago's ERISA claims stemmed from her efforts to include her cousins' daughter, Y.M.V.B., a minor, as a beneficiary in PRTC and UIET's group health plan.[1] Her other causes of action, including discrimination and retaliation, relate to two separate incidents for which she was suspended from work (on October 25, 2013, and on June 5, 2014). Specifically, Santiago alleged in her Amended Complaint that her suspensions were motivated by retaliation for filing a complaint against PRTC and for filing for custody of Y.M.V.B.[2] She also argues that PRTC discriminated against her by requiring her to undergo a medical evaluation to determine her ability to perform her job. The claims against

---

[1] Plaintiff's claims under ERISA, 29 U.S.C. § 100, et. seq., were dismissed at Docket. No. 99.

[2] Santiago refers to a previous complaint she filed in federal court against PRTC. See Civil No. 13-1484. The case was dismissed without prejudice after plaintiff moved for a voluntary dismissal

UIET rest mainly on Santiago's allegations that UIET failed to represent her during these proceedings.

PRTC and UIET moved for summary judgment. Docket Nos. 90 and 92. AIG joined PRTC's Motion. Docket No. 94. Plaintiff opposed. Docket Nos. 101, 102, 103, 104, 106, 107 and 118. PRTC replied. Docket No. 120.

After careful examination, we grant PRTC's and UIET's Motions for Summary Judgment.

**II. Standard**

Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Celotex Corp*. v. *Catrett*, 477 U.S. 317, 322-23 (1986)(If a party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial," summary judgment is proper.) The court must examine

the record in the light most favorable to the nonmovant and indulging all reasonable inferences in the nonmovant's favor. *Maldonado-Denis* v. *Castillo-Rodríguez*, 23 F.3d 576, 581 (1st Cir. 1994).

In its review of the record, the court must refrain from engaging in an assessment of credibility or weigh the evidence presented. *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves*, 530 U.S. at 150 (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 250–251 (1986)).

**III. Factual Findings**

In accordance with Local Rule 56, the Court credits only facts properly supported by accurate record citations. *See* Local Rule 56(e). The following factual findings are taken from the parties' Statement of Uncontested Material Facts,

("SUMFs"), and supporting documentation.[3]

Plaintiff has been an employee of PRTC since January 27, 1992 to the present. PRTC's SUMF ¶ 1. She currently occupies the position of Data Entry Office Clerk in Sales. PRTC's SUMF ¶ 8. Since she began working in PRTC, Santiago has been a member of the UIET. PRTC's SUMF ¶ 3.

Plaintiff was aware that PRTC had discipline regulations and had signed an acknowledgement of receipt of such Regulations. PRTC's SUMF ¶ 6.

1. **The October 15, 2013 incident**

On October 15, 2013, an incident occurred between Santiago and Viviana Pérez (the "October 15, 2013 Incident"). PRTC's SUMF ¶ 11. Viviana Pérez ("Pérez" or "Santiago's Supervisor") was Santiago's supervisor at the end of 2012.

---

3. Defendants filed a Joint Motion to Strike, Docket No. 122, alleging that plaintiff's numerous and separate filings to oppose the motions for summary judgment did not comply with the Local Rules of the District Court for the District of Puerto Rico. Although the Court agrees that plaintiff's piece-meal filings are confusing and run amok of judicial efficiency, we have nonetheless considered them in making the factual findings, under the premise that motions for summary judgment should be considered in the light most favorable to the nonmovant.

PRTC's SUMF ¶ 9. Several employees witnessed the incident. Id. On that date, Santiago went to the kitchen/lunch room and other employees that were there, or that arrived at the kitchen/lunch room just after, noticed that Santiago was tearful. PRTC's SUMF ¶ 1. As she was going to punch the clock, Pérez touched Santiago on her back. PRTC's SUMF ¶¶ 18-20. A dispute ensued. Id. Several employees witnessed the incident. PRTC's SUMF ¶ 16-18.

On October 25, 2013, Santiago received a letter summoning her to a meeting to be held on October 28, 2013, to discuss possible violations of the Discipline Rules. The letter indicated that she could go with a union representative because she could be subjected to a suspension. PRTC's SUMF ¶ 22. Santiago attended the October 28, 2013, meeting. PRTC's SUMF ¶ 23.

During the October 28, 2013, meeting Santiago was informed, in writing, that she had violated Faults 12, 13, 25, and 28 of the Disciplinary Rules during the events that took place on October 15 when Santiago had a discussion with her

supervisor. Santiago was further informed that for that reason, she was being suspended. PRTC's SUMF ¶ 24. Santiago was also informed that the disciplinary action being applied was a suspension of 5 business days, from October 29, 2013 to November 4, 2013, returning to work on November 5, 2013. PRTC's SUMF ¶ 27. Finally, Santiago also learned during that meeting that the suspension carried a two-year probationary period. PRTC's SUMF ¶ 28.

The Disciplinary Rules in question provide the following:

> (i) Fault #12: Disorderly behavior, games of hands, heavy jokes, intimidating or abusing others, use of profanity, improper or obscene language. Altering or disrupting peace and order at work or on the premises of the Company.
>
> (ii) Fault #13: Threatening, indecent or obscene acts, altercations, provocations, or disorderly conduct.
>
> (iii) Fault #25: Violate the practices and/or administrative policies, departmental procedures, instructions bulletins, General Rules of Conduct, Ethics Manual, Code of Business Conduct and/or any other code or standard established by the Company.

>   (iv) Fault # 28: Insubordination or lack of respect to a supervisor, including refusal to perform a job or obey written or verbal orders. PRTC's SUMF ¶ 29.

Santiago received a Memorandum of Violations of Discipline Rules dated October 28, 2013, which referred to the October 15 incident. PRTC's SUMF ¶ 30.

### 2. The June 2014 suspension

On May 16, 2014, Santiago and another employee, Aitza Diaz, were at Santiago's cubicle discussing a work order that Pérez had assigned to Santiago. PRTC's SUMF ¶ 32. Aitza Diaz was also a union delegate. PRTC's SUMF ¶ 33.

Santiago and Pérez had a disagreement regarding the work order. PRTC's SUMF ¶ 34. Santiago began to rebuke Pérez indicating that the established processes required her to return the work order while Pérez indicated that she should process the work order as it was and that she should not return it to the coordinator. PRTC's SUMF ¶ 38.

Because of the incident, Aitza Díaz, who had witnessed the discussion between Santiago and Pérez, decided to call

Gisela Mondecit. PRTC's SUMF ¶ 46. Mondecit occupied the position of Administrator of PRTC's Medical Evaluations Program. PRTC's SUMF ¶ 10. Diaz felt that Santiago was going to attack someone. PRTC's SUMF ¶ 46.

In a confidential report prepared by Gisela Mondecit on May 22, 2014, Ms. Mondecit confirms that Aitza Diaz went to her office on May 16, 2014, to notify her about Santiago's incident with supervisor Pérez and about Santiago's utterances after the incident to the effect that "she was going to take everybody down even if she herself had to also go down." PRTC's SUMF ¶ 50.

There was a meeting to discuss Santiago's situation where Mondecit was present, as were the President of the UIET, and other officials. PRTC's SUMF ¶ 52.

Santiago was required to appear at a subsequent meeting held on May 16, 2014, with Union representatives Edward Sánchez and Nyvia Rivera, Aitza Diaz as union delegate, Eira Concepción from PRTC's Labor area and Gisela Mondecit. PRTC's SUMF ¶ 53. During the meeting, Santiago was given

a letter and was told that she had to attend an appointment with Doctor Lladó and that if she failed to comply she would be subjected to disciplinary actions. Id. The Appointment Letter indicated that the appointment with Dr. Lladó was for May 19, 2014, at 3:00 p.m. PRTC's SUMF ¶ 58. The letter also stated that the referral was made pursuant to Article 13 of the Collective Bargaining Agreement, ("CBA"). PRTC's SUMF ¶ 59.

On May 19, 2014 Mondecit wrote a letter to Dr. Lladó, referring Santiago for the Independent Medical Evaluation indicating that PRTC wanted to know if Santiago was able to work. PRTC's SUMF ¶ 61.1.

Santiago appeared at Dr. Lladó's office for her appointment on May 19, 2014, but the evaluation was not done because she refused to sign a consent form that allowed Dr. Lladó to obtain and review her medical records. PRTC's SUMF ¶ 62. The consent form also clearly indicated in its first paragraph that the purpose of the evaluation was to determine whether Santiago had any health, psychiatric or

emotional condition and whether it affected her work or not or created an impairment or disability. PRTC's SUMF ¶ 64.

On June 4, 2014, Santiago was summoned to a meeting where she was informed that she was going to be suspended and was given a letter dated June 4, 2014 (the "2014 Suspension Letter"). PRTC's SUMF ¶ 67.

The 2014 Suspension Letter informed Santiago that she was being suspended for 15 working days due to the May 16, 2014, incident with Pérez; for not undergoing the psychiatric evaluation she had been referred to; for her behavior during the meeting in which she was notified of the referral to the psychiatrist and for another incident when she was discussing her evaluation with Pérez. PRTC's SUMF ¶ 68.

Santiago sought review of the suspension before the Bureau of Conciliation and Arbitration of Puerto Rico's Labor and Human Resources Department, PRTC v. UIET, Case No. A-15-14. Docket No. 102 at pg. 4 and Docket Nos. 107-1 and 118-1. As a result, her suspension was invalidated.

**IV. Analysis**

The Court will first conduct an analysis of Santiago's allegations under the ADA and whether they survive summary disposition. Next, the Court will examine the retaliation claims and, lastly, the claims based on state statutes.

**1. Discrimination due to perceived mental disability under the ADA**

To establish a prima facie claim under the ADA, Santiago must prove by a preponderance of the evidence: 1) that she was disabled within the meaning of the ADA; 2) that she was qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and 3) that PRTC took adverse action against her because of the disability. *Bailey* v. *Georgia-Pacific Corp.*, 306 F.3d 1162 (1st Cir. 2002) (citations omitted). The ADA defines "disability" as one of these three modalities: (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such an impairment; or (C)

being regarded as having such an impairment. 42 U.S.C. § 12102(2).

Santiago claims that she falls under the third category and asserts that PRTC engaged in discriminatory conduct when it required her to attend a medical appointment with forensic psychiatrist Victor Lladó. PRTC counters that the examination was related to Santiago's job and was a business necessity, and thus justified under Section 12112 (d)(4)(A) of the ADA. The PRTC also cites to case law holding that an employer's request for an independent medical examination that complies with statutory restrictions will not be sufficient to establish, without other evidence, that the employer "regarded" the employee as substantially limited in a major life activity.

The ADA does not prohibit an employer to require a medical examination to determine whether an employee has a disability or the nature or severity of the disability, if he can establish that such examination is job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A)); see also,

§ 12112(d)(4)(B) (an employer may make inquiries into the ability of an employee to perform job-related functions."); *Grenier* v. *Cyanamid Plastics, Inc.*, 70 F.3d 667 (1st Cir. 1995).

PRTC asserts that in requiring Santiago to undergo the medical examination, it relied both on § 12112(d)(4)(A) and on Article 13 of the CBA between PRTC and UIET, of which Santiago was a member. The Appointment Letter that Santiago received referred to Article 13 of the CBA and stated that her attendance "was essential." See Docket No. 90-12.

Article 13 provides that PRTC may require any employee to undergo a medical examination, if no discriminatory intent is present. See Docket No. 90-8, at pg. 219, Exhibit 3 to the Deposition. If the employee disagrees with the doctor's examination, the UIET may request that the PRTC select another doctor within five working days to determine whether the employee is fit to work. Id.

The question is whether such requirement is statutorily allowed. On this point, PRTC claims that the examination complied with both the job-related and business-necessity

prongs required by the ADA. PTRC required Santiago to undergo an examination after an altercation between her and her supervisor. Although there are contested facts regarding the exact nature of certain utterances attributed to Santiago which suggested a potential threat to other employees, it is nonetheless true that one employee who witnessed the incident relayed her concerns to PRTC. Based on those concerns, PRTC activated Article 13 of the CBA.

The Third Circuit has held that an employer's request for an independent medical examination that is job-related and consistent with business necessity "will never, in the absence of other evidence, be sufficient to demonstrate that an employer 'regarded' the employee as substantially limited in a major life activity." *Tice* v. *CTR. Area Transp. Auth.*, 247 F.3d 506, 515 (3d Cir. 2001); see also, *Bustillo–Formoso* v. *Million Air San Juan Corp.*, 261 F.Supp.3d 201, 207-08 (D.P.R. 2016). Here, PRTC's referral was certainly job-related and inextricably intertwined with a business purpose: to ensure the well-being of Santiago, others and a safe work environment.

Therefore, the Court concludes that Santiago has not shown that she is disabled or perceived as disabled within the meaning of the ADA. Because she has failed to establish the first prong of an ADA prima facie case, we find that summary judgment is proper.

**2. Retaliation on the basis of ADA**

The ADA's retaliation provision states: "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). To establish a claim of retaliation, a plaintiff must show that (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse employment action. *Freadman* v. *Metropolitan Property and Cas. Ins. Co.*, 484 F.3d 91, 101 (1st Cir. 2007)(citing *Wright* v. *Comp.USA, Inc.*, 352 F.3d 472, 478 (1st Cir.2003); *Calero–Cerezo* v. *U.S. Dep't of Justice*, 355 F.3d 6, 25–26 (1st Cir.2004)).

Most of Santiago's allegations of retaliation relate to her

ERISA claims, which were already dismissed. However, Santiago also avers that she engaged in protected conduct by filing administrative charges against PRTC and UIET with the EEOC on July 22, 2014. See Docket No. 33 at pg. 2. In her EEOC complaints, Santiago claimed employment discrimination under ADA's "perceived as" modality.

Santiago falters in clearly delineating what was the adverse employment action that followed her EEOC complaint since the two suspensions predated the EEOC charges. It is undisputed that Santiago is still employed at PRTC and holds the same position as she did before, and that she is still a member of the UIET.

After reviewing the record and plaintiff's evidence proffered in opposition to the motion for summary judgment, we find that the evidence is insufficient, even viewed in the light most favorable to the plaintiff, to prove an adverse retaliatory employment action.

### 3. Allegations against UIET for failure to represent

Santiago argues that the UIET breached its duty of fair representation because it failed to stand up to the PRTC's alleged discriminatory and retaliatory actions. Santiago makes a blanket statement but does not specify which of her employer's actions required UIET's involvement, and under which provision of the CBA.

"The duty of fair representation mandates that a union conduct at least a 'minimal investigation' into an employee's grievance*." Emmanuel* v. *International Broth. of Teamsters*, *Local Union No. 25*, 426 F.3d 416, 420 (1st Cir. 2005)(citing *Garcia v. Zenith Elec. Corp.*, 58 F.3d 1171, 1176 (7th Cir.1995)). However, "only an 'egregious disregard for union members' rights constitutes a breach of the union's duty" to investigate." Id. (citing *Castelli* v. *Douglas Aircraft Co.*, 752 F.2d 1480, 1483 (9th Cir.1985)).

A review of the uncontested facts shows no such "egregious disregard." Quite the contrary, the facts evidence that the UIET effectively represented Santiago in her claims

against PRTC. For instance, although UIET agreed with the referral to the psychiatric evaluation, it disagreed with the suspension and contested it. The UIET, representing Santiago, filed a grievance in the Arbitration and Conciliation Division of the Labor Department. Santiago ultimately prevailed.

Given the record's lack of evidence in support of a claim against the UIET for breaching its duty of representation, UIET's Motion for Summary Judgment is Granted.

   **4. State Law Claims**

Having dismissed the federal claims, the Court declines to exercise jurisdiction to hear the remaining state law causes of action. "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of America* v. *Gibbs*, 383 U.S. 715, 726 (1966). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Id. The Court thus dismisses the state law claims.

## V. Conclusion

For the reasons discussed herein, PRTC's and UIET's Motions for Summary Judgment at Docket Nos. 90 and 92 are granted.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 19th day of September 2019.

S/ SILVIA CARREÑO-COLL
UNITED STATES MAGISTRATE JUDGE